IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–02422–PAB–KMT


DELMART E.J.M VREELAND, II,

Plaintiff,

v.

THOMAS C. FISHER, MD,
KAREN A. JOHNSON, MD,
DEA ARAGON,
JOAN M. SHOEMAKER,
HEART OF THE ROCKIES REGIONAL MEDICAL CENTER,
RICHARD RAEMISCH,
THE DOUGLAS COUNTY SHERIFF, MR. WEAVER,
KARI BARONI, CDOC/BVCF, H.S.A., and
MICHAEL FRENCH,

Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

This case involves claims that Defendants violated Plaintiff's Fifth, Eighth, and Fourteenth

Amendment rights and that some of Defendants committed state torts.   This matter is before the

court on the following motions:

1.      Defendants Douglas County Sheriff Weaver, Aragon, and French's ("Douglas

Defendants") "Motion to Dismiss" (Doc. No. 35 [Douglas Defs.' Mot.], filed January 3, 2014), to

which Plaintiff filed his response on February 28, 2014 (Doc. No. 61 [Resp. Douglas Defs.' Mot.])

and the Douglas Defendants filed their reply on March 13, 2014 (Doc. No. 66 [Douglas Defs.' Reply]);

2.      Defendants Shoemaker, Baroni, and Raemisch's ("CDOC Defendants") "Motion to Dismiss Complaint"[1] (Doc. No. 37 [CDOC Defs.' Mot.]), to which Plaintiff filed his response on February 28, 2014 (Doc. No. 61)[2] and the CDOC Defendants filed their reply on March 27, 2014 (Doc. No. 77 [CDOC Defs.' Reply]);

3.      "Defendant Karen Johnson, M.D.'s Motion to Dismiss" (Doc. No. 43 [Johnson's Mot.], filed January 23, 2014), to which Plaintiff filed his response on May 15, 2014 (Doc. No. 102 [Resp. Johnson's Mot.]) and Defendant Johnson filed her reply on May 29, 2014 (Doc. No. 106 [Johnson's Reply]);

4.      "Heart of the Rockies Regional Medical Center's ["HRRMC"] Motion to Dismiss" (Doc. No. 46 [HRRMC's Mot.], filed January 24, 2014), to which Plaintiff filed his reply on March 31, 2014 (Doc. No. 78 [Resp. HRRMC's Mot.]) and HRRMC filed its reply on April 28, 2014 (Doc. No. 96 [HRRMC's Reply]); and

5.      Defendant Fisher's "Motion to Dismiss" (Doc. No. 75 [Fisher's Mot.], filed March 20, 2014), to which Plaintiff filed his response on May 1, 2014 (Doc. No. 97 [Resp. Fisher's Mot.]) and Defendant Fisher filed his reply on May 28, 2014 (Doc. No. 105 [Fisher's Reply]).

These motions are ripe for recommendation and ruling.

---

1 This court granted Plaintiff's motion to substitute Defendant Raemisch in place of Roger Werholtz pursuant to Fed. R. Civ. P. 25(d) on September 27, 2013.   (Doc. No. 7.)
2 Plaintiff filed a single response to the Douglas Defendants and CDOC Defendants' motions. (*See* Doc. No. 61.)

## STATEMENT OF THE CASE

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against the defendants for alleged constitutional.   (*See* Doc. No. 1 [Compl.], filed September 5, 2013.)   Plaintiff also alleges and state law violations against Defendant Fisher.   (*Id.*)   Plaintiff alleges he was in the Douglas County jail from the time of his arrest in October 2004 until October 2008, at which point he transferred to the Colorado Department of Corrections ("CDOC"), Buena Vista Correctional Facility ("BVCF").   (*Id.* at 1.)   Plaintiff alleges during the entire time he has been incarcerated, he has suffered from serious medical conditions for which the defendants have denied him treatment.   (*See id.*)

Plaintiff asserts eight claims for relief.   In Claim One, Plaintiff alleges all of the defendants violated his Fifth, Eighth, and Fourteen Amendment rights by denying him proper medical care.   (*Id.* at 22-24.)   In Claim Two, Plaintiff alleges Defendant Fisher violated his Eighth Amendment rights by denying him medical treatment at BVCF.   (*Id.* at 24-26.)   In Claim Three, Plaintiff alleges Defendant Shoemaker violated his Eight Amendment rights by denying him medical care at BVCF.   (*Id.* at 26-27.)   In Claim Four, Plaintiff alleges Defendant Raemisch violated his Eighth Amendment rights by failing to respond to requests for medical treatment and accommodations.   (*Id.* at 27.)   In Claim Five, Plaintiff alleges Defendants Johnson and HRRMC violated Plaintiff's Eighth Amendment rights by denying him proper medical after he was discharged from HRRMC following emergency surgery.   (*Id.* at 27-30.)   In Claim Seven, Plaintiff alleges the Douglas Defendants, Defendant Fisher, and the CDOC Defendants conspired to interfere with Plaintiff's civil rights.   (*Id.* at 38-41.)   In Claim Eight, Plaintiff alleges

3

Defendant Raemisch violated his Eighth Amendment rights by requiring that Plaintiff be handcuffed to the bed while he was hospitalized at HRRMC.   (*Id.* at 41-42.)   Finally, in Claim Six, Plaintiff alleges Colorado tort claims against Defendant Fisher for negligence and malpractice.   (*Id.* at 31-38.)

Plaintiff seeks compensatory, punitive, and nominal damages, as well as injunctive and declaratory relief.   (*See id.* at 44.)

## STANDARDS OF REVIEW

### *1.*   **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.   The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).   *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").   However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."   *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).   A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.   *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).   *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any

discussion of those issues").   The plaintiff's *pro se* status does not entitle him to application of

different rules.   *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## 2.   *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack

of subject matter jurisdiction.   Fed. R. Civ. P. 12(b)(1).   Dismissal under Rule 12(b)(1) is not a

judgment on the merits of a plaintiff's case.   Rather, it calls for a determination that the court lacks

authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations

of the complaint.   *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal

courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically

authorized to do so).   The burden of establishing subject matter jurisdiction is on the party

asserting jurisdiction.   *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).   A

court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it

becomes apparent that jurisdiction is lacking."   *See Basso*, 495 F.2d at 909.   The dismissal is

without prejudice.   *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see*

*also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for

lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition

on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusory allegations of jurisdiction."   *Groundhog v.*

*Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).   When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one for

summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).   Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### 3.     *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007).   "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   The *Iqbal* evaluation requires two prongs of analysis.   First, the court identifies "the allegations in the complaint that are not entitled to the

assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.   *Id*. at 1949-51.   Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."   *Id*. at 1951.   If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.   *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.   *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 129 S. Ct. at 1940.   Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "   *Id.* at 1949 (citation omitted).   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' "   *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

## ANALYSIS

### *1.     Defendants Weaver, Aragon, and French's Motion to Dismiss*

The Douglas Defendants move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.   (*See* Douglas Defs.' Mot.)   In his Complaint, Plaintiff makes allegations against the Douglas Defendants in Claims One and Seven.   (*See id.* at 21 &38-41.)

The Douglas Defendants argue that Plaintiff's claims against them are barred by the statute of limitations.

Actions brought pursuant § 1983 are subject to the general personal injury limitation period of the state in which the action arose.   *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994).   In Colorado, the limitation on a retaliation claim brought pursuant to § 1983 is two years.   See Colo. Rev. Stat. § 13-80-102(1)(g) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to a § 1983 claim).   However, federal law, rather than state law, determines when a cause of action accrues. *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). Pursuant to federal law, "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."   *Id.* at 969.   That is, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent."   *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted). Further, once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to Plaintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date.   *See Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

Plaintiff alleges he was arrested by the Douglas Defendants in October 2004 and was an inmate at the Douglas County Jail until October 2008, when he was transferred to the CDOC.

(Compl. at 5 & 21.)   Plaintiff alleges in January 2005, Defendants Aragon and French, with the assistance and permission of Defendant Weaver, "prepared a written statement containing known false information that said . . . . [P]laintiff had a history of faking illnesses such as cancer, [AIDS] and other issues . . . ."   (*Id.* at 21.)   This letter was delivered to the "Douglas County [J]ail's medical staff and then to the CDOC."   (*Id.*)   Plaintiff alleges, due to this false statement, he was not given treatment for future medical issues.   (*Id.*)

Plaintiff alleges between 2004 and 2008, he submitted approximately 75 grievances and appeals to the Douglas Defendants and asked for proper medical treatment.   (*Id* at 7.)   Thus, the court finds that Plaintiff's claims against the Douglas Defendants accrued, at the latest, in October 2008, when Plaintiff left the Douglas County Jail and when he knew or should have known of any injury—their failure to treat him or their conspiracy to keep others from treating him—allegedly caused by the Douglas Defendants.   Thus, Plaintiff was required to file his claims against the Douglas Defendants on or before October 2010.   Plaintiff did not file this case until September 5, 2013, nearly three years too late.   Therefore, Plaintiffs claims against Defendants Douglas County Sheriff Weaver, Aragon, and French are barred by the statute of limitations and properly are dismissed.

**2.     *Defendants Shoemaker, Baroni, and Raemisch's Motion to Dismiss***

The CDOC Defendants move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.   (*See* CDOC Defs.' Mot.)

### a.   Defendant Raemisch

The CDOC Defendants move to dismiss the claims against Defendant Raemisch for lack of personal participation.   (CODC Defs.' Mot. at 9-12.)   "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."   *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).   There must be an "affirmative link between the defendant's conduct and any constitutional violation."   *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).   "[T]o state a claim in federal court, a complaint must explain what each defendant did to him . . . when the defendant did it; how the defendant's action harmed him . . . and what specific legal right the plaintiff believes the defendant violated."   *Nasious v. Two Unknown B.I.C.E Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).   A defendant may not be held liable under § 1983 merely because of his or her supervisory position.   *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983).

The CDOC Defendants argue that Plaintiff's allegations are insufficient to establish personal participation by Defendant Raemisch.   (CDOC Defs.' Mot. at 10-12.)   Though Plaintiff initially opposed the CDOC Defendants' motion to dismiss Defendant Raemish (*see* Resp. Douglas Defs.' Mot. at 28), in his motion to amend his complaint[3], Plaintiff seeks to "remove all of Claim Four, and any [c]laims against Defendant Richard Raemisch," because "it appears that Defendant Raemisch is simply the figure head of the CDOC, and he should not be blamed for the actions or inactions of CDOC's past Executive Directors."   (Doc. No. 103 at 2, ¶ 6.)

---

3 Plaintiff's motion to amend his complaint (Doc. No. 103) will be addressed in a separate recommendation.

Therefore, Plaintiff's Claim Four asserted only against Defendant Raemish should be dismissed in its entirety, and Claim Eight should be dismissed to the extent Plaintiff asserts the claim against Defendant Raemish.   Defendant Raemisch properly is dismissed as a defendant in this action.

### b.   *Claims One and Three for Eighth Amendment Violations*

The CDOC Defendants also move to dismiss Plaintiff's Claim One against Defendants Shoemaker and Baroni and Claim Three against Defendant Shoemaker for his failure to show they personally participated in the alleged constitutional violations.   (CDOC Defs.' Mot. at 5-6.)

To the extent Plaintiff's claims are based on the denial of grievances, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."   *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing, *e.g.*, *Whitington v. Ortiz*, 307 F. App'x 179, 192-193 (10th Cir. 2009) (denial of grievances alone is insufficient to establish personal participation in alleged constitutional violations which prompted filing of grievance); *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002)( per curiam )("[Plaintiff] failed to state First Amendment claims relating to his grievances . . . because defendants' denial of his grievances did not state a substantive constitutional claim."). *See also Adams v. Wiley*, No. 10-1052, 2010 WL 3995977, * 3 (10th Cir. Oct. 13, 2010) ("denial of a grievance alone does not constitute 'personal participation' in the denial of a constitutional right sufficient to support a . . . claim against these individuals").

In his Complaint, Plaintiff alleges on January 6, 2010, and March 29, 2010, Defendant Shoemaker denied grievances regarding request for medical care.   (Compl. at 11-12.)   Plaintiff

11

also generally asserts in Claim One that he was denied medical care by Defendant Shoemaker because she denied grievances from October 2008 until February 2012.   (*See id.* at 19, 22-23.) Finally, in Claim Three Plaintiff alleges that he "submitted written kites, personal letters, ADA Montez requests and grievances directly to [D]efendant Shoemaker."   (*Id.* at 26.)   As to Defendant Baroni, Plaintiff generally concludes in Claim One that he "denied medical treatment and or any tests whatsoever . . ." and that he denied medical care "from October 2008 until the present."   (Compl. at 19, 22.)

Plaintiff has failed to allege how Defendants Shoemaker or Baroni participated in any denial of medical treatment or care.   Plaintiff's allegations that Defendant Shoemaker denied grievances do not establish personal participation under § 1983.   *Gallagher*, 587 F.3d at 1069. Moreover, Plaintiff's conclusory allegations that Defendant Baroni denied him medical care are insufficient to state a claim upon which relief can be based.   *Hall,* 935 F.2d at 1110.

Plaintiff's Claims One and Three asserted against Defendant Shoemaker and Plaintiff's Claim One asserted against Defendant Baroni properly are dismissed.

### ii.   *Claims Three and Seven for Conspiracy*

The CDOC Defendants also move to dismiss Plaintiff's conspiracy claims for failure to state a claim upon which relief can be granted.   In Claim Three, Plaintiff alleges Defendant Shoemaker "conspired with [D]efendant Fisher and decided it was too costly to treat plaintiff and denied any and all treatment to plaintiff and forced plaintiff to suffer in daily pain for over four full years, and counting."   (Compl. at 27.)

In Claim Seven, Plaintiff alleges Defendants Baroni and Shoemaker "refuse any up to date testing at all, deny an MRI or CT-Scan and tell plaintiff that he must pay for these tests if he wants any test completed" and they "conspired [with Defendant Fisher] and said that it would be cheaper to just allow the plaintiff to suffer and die . . . than it would be to treat plaintiff and possibly cure and or simply help plaintiff have a more better pain free quality life."   (Compl. at 41.)

To state a section 1983 conspiracy claim, a plaintiff must demonstrate the alleged conspirators had a meeting of the minds and engaged in concerted action to violate the plaintiff's constitutional rights.   *Gallegos v. City & Cnty. of Denver*, 984 F.2d 358, 364 (10th Cir. 1993). A plaintiff must provide sufficient facts to support the inference that some prearranged plan or joint action existed between the conspirators to engage in all of the alleged conspiratorial activities. *Hunt v. Bennett*, 17 F.3d11263, 1266 (D. Colo. 2007); *accord Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983) (noting that "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action").   Plaintiff fails to allege a single fact that even conceivably suggests a meeting of the minds between any of the defendants.   Plaintiff's Claims Three and Seven for conspiracy properly are dismissed.

### 3.      *Defendant Johnson's Motion to Dismiss*

Defendant Johnson moves to dismiss on the bases that she is not a state actor for purposes of § 1983.   (Johnson's Mot. at 3-6.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Supreme Court explained in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982), the

conduct allegedly causing the deprivation of a federal right must be "fairly attributable to the

State."

> First, the deprivation must be caused by the exercise of some right or privilege
> created by the State or by a rule of conduct imposed by the state or by a person for
> whom the State is responsible . . . .  Second, the party charged with the deprivation
> must be a person who may fairly be said to be a state actor.  This may be because
> he is a state official, because he has acted together with or has obtained significant
> aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.*  In *West,* the Supreme Court held that a private physician employed by a state to provide

medical services to state prison inmates was acting under color of state law when treating a

prisoner.  487 U.S. at 54.  Similarly, the Tenth Circuit has held that a medical center and the

individual doctors actually employed by that facility may be liable under § 1983 for an Eighth

Amendment violation "because the [medical center] contracted with the State . . . to provide

medical care to state prisoners." *Parker v. Gosmanova*, 335 F. App'x 791, 794 (10th Cir. 2009).

*But compare Connor v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1994) (holding that a physician acted

under color of state law when treating a prisoner even though there was no contractual relationship

between the prison and the physician) and *Dixon v. Baptist South Medical Hospital*, Civil Action

No. 2:07-CV-662-TFM, 2010 WL 431186, at *7 (M.D. Ala. Feb. 1. 2010) (noting that "[t]he vast

majority of federal courts agree that treatment by a non-contract private physician, nurse or

hospital upon referral or on an emergency basis does not satisfy the requirements for state action").

Plaintiff alleges that Dr. Johnson acted under color of state law because she was "under

contract with the hospital which was under CDOC contract" and "she operated on plaintiff at

CDOC request."   (Compl. at 2, ¶ 3.)   In support of her argument that she is not a state actor for

the purposes of § 1983, Defendant Johnson attaches an affidavit in which she avers at the time she

treated Plaintiff she was not an employee of HRRMC and had no contract with the CDOC to

provide care to inmates.[4]   (Johnson's Mot. Dismiss at 5, Ex. A, ¶¶ 2, 4.)   Rather, Defendant

Johnson avers she was solely a private physician who had privileges at HRRMC, happened to be

on call, and treated Plaintiff because the emergency physician called her to take care of an

emergent surgical issue.   (*Id.* at ¶¶ 2−3.)

　　　Here, Defendant Johnson did not enter a voluntary contractual agreement to provide

medical services to state prison inmates.   Thus, the court finds Defendant Johnson was not acting

under color of state law.   *West*, 487 U.S. at 54.   Therefore, this Court does not have subject

matter jurisdiction over Plaintiff's claims against Defendant Johnson, and Claim Five asserted

against her should be dismissed without prejudice.

**4.** 　　**Defendant HRRMC's Motion to Dismiss**

　　　Defendant HRRMC moves to dismiss Plaintiff's claims because Plaintiff fails to meet the

objective and subjective elements of an Eighth Amendment claim for deliberate indifference to

---

4  The defendant urges the Court to consider the affidavit without converting the motion to dismiss
into a motion for summary judgment.   (*Id.* at 5 n.2.)   However, the under-color-of-state-law
requirement is a "jurisdictional requisite for a § 1983 action, which . . . furthers the fundamental
goals of preserving an area of individual freedom by limiting the reach of federal law . . . and
avoiding imposing on the state, its agencies or officials, responsibility for conduct for which they
cannot fairly be blamed."   *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995).   Therefore,
Defendant Johnson's motion properly is considered a Rule 12(b)(1) motion, and the Court may
consider matters outside the pleadings without transforming the motion into one for summary
judgment.   *Holt*, 46 F.3d at 1003.

serious medical needs.   (HRRMC's Mot.)   The court finds Plaintiff's claims should be dismissed for a different reason, however.[5]

Though Defendant HRRMC may be subject to liability under § 1983 for the Eighth Amendment violation alleged in this case because it contracted with the State of Colorado to provide medical care to state prisoners, *see West*, 487 U.S. at 54–57, Defendant HRRMC cannot be held liable under § 1983 based on the doctrine of *respondeat superior*.   *See Brammer–Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1211 (10th Cir. 2007) ("It is true that § 1983 liability for an entity cannot be predicated on *respondeat superior*.").   Instead, Plaintiff must establish Defendant HRRMC's independent liability based on a wrongful policy or custom.   *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).   Further, Defendant HRRMC "may not be held liable [under § 1983 if] there was no underlying constitutional violation by any of its [employees]."   *Id.*

In the Complaint, Plaintiff alleges he wrote to Defendants Johnson and HRRMC and asked for follow-up medical treatment after his appendectomy (Compl. at 18), but he was told to ask Defendant Fisher for help (*id.* at 29).   Plaintiff alleges Defendants Johnson and HRRMC violated the Eighth Amendment by denying Plaintiff medical care.   (*Id.* at 30.)   Plaintiff's Complaint is devoid of any factual allegations that would establish the independent liability of Defendant HRRMC.   Moreover, as discussed *supra*, at the time she treated Plaintiff, Defendant Johnson was not an employee of HRRMC, and Plaintiff has alleged no underlying constitutional violation by any other employee of HRRMC.

---

5 The court may recommend dismissal at any time it determines that the complaint fails to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Therefore, Plaintiff's claims against Defendant HRRMC properly are dismissed.

**5.      Defendant Fisher's Motion to Dismiss**

Defendant Fisher moves to dismiss on the bases that (1) Plaintiff's claims are barred by the

statute of limitations; (2) Plaintiff fails to state a claim upon which relief can be granted; (3)

Plaintiff has no viable claim for punitive damages; and (4) the Court should decline to exercise

supplemental jurisdiction over Plaintiff's state law negligence claim.

**a.      Statute of Limitations**

As discussed *supra*, "[t]he statute of limitations begins to run when the plaintiff knows or

has reason to know of the existence and cause of the injury which is the basis of his action."

*Indus. Constructors Corp.*, 15 F.3d 969.   As such, Defendant Fisher argues any claims brought by

Plaintiff arising from conduct that occurred prior to September 5, 2011—two years prior to the

date Plaintiff filed his Complaint—are barred.   (Fisher's Mot. at 3-4.)

In his Complaint, Plaintiff alleges Defendant violated his Eighth Amendment right to be

free from cruel and unusual punishment as follows:

> General Allegations
> In October 2009, Plaintiff filed a grievance that "[D]efendant Fisher had now
> declared, without full medical examination, that plaintiff had no medical illnesses
> and or disabilities" and denied Plaintiff a medical disability accommodation.
> (Compl. at 10-11.)
>
> Defendant Fisher refused to treat Plaintiff until a new Health Services
> Administrator ("HSA") was assigned to BVCF.   (*Id.* at 12.)   The new HSA called
> a meeting on March 1, 2010, with all medical staff and Plaintiff, in which Plaintiff
> addressed all of his medical needs, including a "testicle tumor with possible cancer
> or, an epydidmal [sic] cysts," asthma, "stomach/intestine/appendix issue[s]," and
> eye and hand issues.   (*Id.* at 12-14.)   The HSA divided Plaintiff's medical issues
> among several health care providers, but when the HSA left after thirty days
> Defendant Fisher again refused to treat Plaintiff and told other health care providers

not to treat him.   (*Id*. at 13-14.)   Plaintiff states he submitted over 163 "letters, kites, grievances and RFSC" between October 2008 and February 2012.   (*Id*. at 14.)

On February 28, 2012, Plaintiff became ill and went to the medical office.   (*Id*. at 15.)   Plaintiff states he was "placed in a room where he was told it was just gas and given motrin and bentyl and left to sit for about 2 hours."   (*Id*.)   Plaintiff alleges Defendant Fisher refused to allow plaintiff to go to a hospital and insisted plaintiff was faking the illness.   (*Id*.)   At some point later that morning, a nurse "insisted that plaintiff be sent immediately to a hospital," where he was diagnosed with appendicitis and had surgery.   (*Id*.)

When Plaintiff returned to BVCF from HRRMC after surgery, he alleges "[n]o pain medication was granted and or made available and no bandages were made available to cover the surgery incisions and stitches that were protruding from plaintiff's abdominal area."   (*Id*. at 17.)   Plaintiff asked to see Defendant Fisher, but Defendant Fisher "refused to see plaintiff and sent an e-mail to P.A. Kalameyer and ordered her to see and treat plaintiff.   P.A. Kalameyer sent an e-mail back to defendant Fisher and told defendant Fisher that she was not going to examine plaintiff and that defendant Fisher must do it."   (*Id*.)   Plaintiff was seen by Defendant Fisher about one week later, but Defendant Fisher "refused to grant any pain medications or test for complications and plaintiff started to get sicker and sicker and lost more and more weight."   (*Id*. at 17-18.)   Defendant Fisher allegedly told Plaintiff "that he was not going to treat plaintiff because the surgery complications were not his problem and were the problem of defendants Dr. Johnson and Heart of the Rockies Regional Medical Center."   (*Id*. at 18.) Plaintiff alleges since his surgery "has suffered serious complications such as pain, swelling, bladder problems, heart issues, nausea, weight loss, diarrhea, mental anguish and fear from not knowing what is wrong."   (*Id*. at 19.)

Claim One
"Plaintiff complained of serious pain and weight loss and the inability to keep food down, of stomach pains and intestine and appendix pains, to defendant Fisher and Shoemaker and was ignored and forced to suffer from October 2008 until February of 2012."   (*Id*. at 23; .)

Claim Two
Between October of 2008 and February of 2012, he "begged [D]efendant Fisher for medical tests to find out why plaintiff suffered from chronic pain in his stomach, intestines, appendix, and daily diarrhea."   (*Id*. at 24.)   Plaintiff alleges "Defendant Fisher refused to give proper testing and proper treatment for a period of over 4 years.   Due to [D]efendant Fisher's refusal and failure to treat plaintiff, a stone was

allowed to grow inside plaintiff for over four years and caused poison from plaintiff's appendix to leak into plaintiff's intestines and body for years.   Plaintiff suffered permanent internal and external physical damages."   (*Id.* at 25.)   Plaintiff also alleges Defendant Fisher refused to treat his asthma or order testing for his asthma and lung issues.   (*Id.* at 25-26.)

It is clear that Plaintiff knew of the existence of his medical issues and Defendant Fisher's alleged failure to treat him for the medical issues no later than March 1, 2010, when Plaintiff met with the new HSA and the medical staff and addressed all of his medical needs, including a "testicle tumor with possible cancer or, an epydidmal cysts," asthma, "stomach/intestine/appendix issue[s]," and eye and hand issues, and discussed Defendant Fisher's alleged failure to treat him. (Compl. at 12-14.)   Thus, Defendant Fisher is correct that any of Plaintiff's claims for actions or inactions prior to September 5, 2011, are barred by the statute of limitations and should be dismissed.

In his response, Plaintiff appears to argue that his claims are not barred because Defendant Fisher "continually, intentionally, refused proper medical care" and that Plaintiff complained of "stomach issues for years on end."   (Resp. Fisher's Mot at 13, 17.)   To the extent Plaintiff attempts to apply the continuing violation doctrine to his claims, the Tenth Circuit has never extended the doctrine in § 1983 cases.   *Fogle v. Slack*, 419 F. App'x 860, 864 (10th Cir. 2011). The continuing violation doctrine is rooted in employment discrimination law, and has been recognized as "a creature of the need to file administrative charges" as required by Title VII. *Houck v. City of Prairie Village, Kan.*, 166 F.3d 1221, 1998 WL 792154, at *1 (10th Cir. 1998). "The doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated."   *Id.* at *2

(internal quotations and citation omitted).   Therefore, "a continuing violation claim fails if the plaintiff knew, or through the exercise of reasonable diligence would have known, [that his rights were being violated] at the time the earlier events occurred."   *Wood v. Milyard*, 414 F. App'x 103, 106 (10th Cir. 2011) (quoting *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003)).

In his Complaint, Plaintiff alleges he filed grievances regarding all of Defendant Fisher's alleged actions or inactions.   (*See* Compl. at 10-11 [grievance related to alleged denial of medical examination and denial of disability accommodation; and at 14 [Plaintiff submitted over 163 "letters, kites, grievances and RFSC" regarding his medical care between October 2008 and February 2012].)   Thus, it is clear Plaintiff knew that Defendant Fisher's actions or inactions in violation of his constitutional rights existed before the expiration of the statute of limitation. Plaintiff's knowledge of his pleaded constitutional deprivations at the time of the events precludes his assertion of the continuing violation doctrine at this time.   *See Wood*, 414 F. App'x at 106; *Rueb v. Zavaras*, No. 09–cv–02817–REB–MEH, 2011 WL 839320, at *5 (D. Colo. Mar. 7, 2011) (in applying continuing violation doctrine to Section 1983 claim, finding that because the plaintiff admitted he had been subject to the challenged correctional facility policies "for many years," he "knew or should have known of their existence well before [the limitations cut-off]," and doctrine did not preclude dismissal of claims as time-barred).

Therefore, Plaintiff's claims asserted against Defendant Fisher for any actions or inactions prior to September 5, 2011, are barred by the statute of limitations and properly are dismissed.

### b.      Eighth Amendment Claims

Defendant Fisher also moves to dismiss Plaintiff's Eighth Amendment claims against him for failure to state a claim upon which relief can be granted.   (Fisher's Mot. at 4-8.)

The Eighth Amendment prohibits cruel and unusual punishment.   U.S. Const. amend VIII. As such, it requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] must 'take reasonable measures to guarantee the safety of the inmates.' "   *Farmer v. Brennan*, 511 U.S. 825, 832   (1994) (citation omitted).   The court's analysis of Plaintiff's Eighth Amendment claims involves both an objective and subjective component.   *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

As to the objective component, the court considers whether Plaintiff has been deprived of a sufficiently serious basic human need.   "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.' "   *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)).   Defendant Fisher does not dispute the objective component of Plaintiff's Eighth Amendment claims.   (Fisher Mot. at 5.) The court finds that Plaintiff has satisfied this element of the analysis.

To the extent that Plaintiff raises an issue related to the delay in receiving medical treatment, the Tenth Circuit has held that "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition"

may "constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2008)).

It appears from the general allegations in Plaintiff's Complaint that Plaintiff seeks relief for Defendant Fisher's alleged failure to send him immediately to the hospital on February 28, 2012, when he was diagnosed with appendicitis.[6]   (*See* Compl. at 15.)   However, "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210 (noting that "not every twinge of pain suffered as the result of delay in medical care is actionable").   "Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems." *Hunt v. Uphoff*, No. 98-8073, 1999 WL 1268340, at *3 (10th Cir. Dec. 30, 1999) (citing *Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187 & n.21 (11th Cir.1994) (collecting cases)). Prison officials may be liable for delays resulting in lifelong handicaps or permanent losses. *See Hunt*, 1999 WL 1268340, at *3.

Plaintiff alleges he became ill at 11:45 a.m. on February 27, 2012, and asked the evening officer to call "medical." (Compl. at 15.)   Plaintiff states he was told that "medical was busy with something else." (*Id.*)   The next morning, Plaintiff was taken to medical, given medication, told his problem was "just gas," and left to sit for two hours. (*Id.*)   Plaintiff alleges Defendant

---

6 Plaintiff's Claim Two asserted against Defendant Fisher for alleged Eighth Amendment violations encompasses only general allegations that Defendant Fisher failed to treat his serious medical needs between October 2008 and February 2012. (*See* Compl. at 24-25.)   As discussed *supra*, however, claims asserted against Defendant Fisher for any actions or inactions prior to September 5, 2011, are barred by the statute of limitations.

Fisher refused to allow him to go to the hospital, but a nurse finally insisted that Plaintiff be sent to the hospital. (*Id.*) Plaintiff alleges when his blood work came back at the hospital, it was discovered that his white blood count was so high that "by this time plaintiff was almost dead." (*Id.*)

To the extent that Plaintiff, in his opinion, asserts that Defendant Fisher did not satisfactorily diagnose his condition, "such a difference of opinion [often only] amounts to a medical malpractice claim . . . [which] cannot be the basis for a federal [§ 1983] action. . . . [A] medical malpractice claim does not become a constitutional violation simply because the plaintiff is a prisoner." *Pearson v. Simmons*, No. Civ. A. 95–3006–GTV, 1998 WL 154552, at *2 (D. Kan. Mar.17, 1998) (citations omitted) (noting that inmate's allegation that defendants were deliberately indifferent to his medical injury based upon a disagreement about the level of care he received for that injury did not state an Eighth Amendment claim).

In his Complaint, Plaintiff fails to allege that Defendant Fisher refused to see Plaintiff in the overnight hours from February 27 to 28, 2012. (*See* Compl. at 15.) Moreover, Plaintiff fails to allege any substantial harm from the two-hour delay in sending Plaintiff to the hospital after Plaintiff was seen by Defendant Fisher on February 28, 2012. Rather, Plaintiff alleges he was sent to surgery to remove his appendix and discharged from the hospital to the CDOC infirmary just one day later, on March 1, 2012. (*Id.* at 16.) The medical issues for which Plaintiff now seeks redress are related to the alleged failure of Defendant Fisher to treat Plaintiff <u>after</u> he returned to BVCF—<u>not</u> Defendant Fisher's alleged failure to send Plaintiff to the hospital immediately after Plaintiff was seen on February 28, 2012. Plaintiff's claim that Defendant

23

Fisher violated his Eighth Amendment rights on February 28, 2012, fails because Plaintiff has not alleged "deliberate indifference which result[ed] in substantial harm. *Olson*, 9 F.3d at 1477. Moreover, Plaintiff fails to allege a "lifelong handicap or a permanent loss." *Hunt*, 1999 WL 1268340, at *3.

It also appears from the general allegations in Plaintiff's Complaint that Plaintiff seeks relief for Defendant Fisher's alleged failure to treat Plaintiff after his return to BVCF from HRRMC after surgery. (*See* Compl. at 17-18.) Plaintiff alleges he was seen by Defendant Fisher about one week after he returned to BVCF, but Defendant Fisher "refused to grant any pain medications or test for complications and plaintiff started to get sicker and sicker and lost more and more weight." (*Id.* at 17-18.) Plaintiff alleges Defendant Fisher told Plaintiff the pain, swelling, and stiffness Plaintiff was experiencing "was normal, the surgery would take about 6 months to heal and told plaintiff to start exersizing [sic]. Defendant Fisher could not explain the stitches and said not to worry. Plaintiff did not like this advise [sic] because [D]efendant Johnson had told plaintiff not to exercise for some time." (*Id.* at 29.)

The subjective component is not satisfied if a medical professional "merely exercises his considered medical judgment." *Self*, 439 F.3d at 1232. Matters within the scope of medical judgment include "whether to consult a specialist or undertake additional medical testing." *Id.* (Eighth Amendment is not violated "when a doctor simply resolves the question whether additional diagnostic techniques" are required). Further, "a medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Absent evidence of recklessness, there is no deliberate indifference when a medical

professional "orders treatment consistent with the symptoms . . . [and] continues to monitor the patient's condition." *Self*, 439 F.3d at 1232-33.   Plaintiff's allegation that Defendant Fisher failed to order further testing fails to state a claim for deliberate indifference.

Moreover, Plaintiff's allegations do not reveal that Plaintiff's complaints of pain, swelling, and stiffness were ignored but rather describe his disagreement with Defendant Fisher's failure in one post-operative visit to prescribe medication and his difference of opinion as to whether Plaintiff should exercise.   "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."   *Perkins v. Kansas Dep't. of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999).

Plaintiff has failed to state an Eighth Amendment claim against Defendant Fisher, and Defendant Fisher's motion to dismiss properly is granted in this regard.

### c.    *Qualified Immunity*

The CDOC Defendants and Defendant Fisher, in their individual capacities, raise the defense of qualified immunity to Plaintiff's claims.   Whether a defendant is entitled to qualified immunity is a legal question.   *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).   To overcome the defendants' claim of qualified immunity, the plaintiff must establish that the defendants' actions violated a constitutional or statutory right of the plaintiff's and that the right at issue was clearly established at the time of the defendants' alleged unlawful conduct.   *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).   "[C]ourts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."   *Id.*   "Qualified immunity is applicable unless" the

plaintiff can satisfy both prongs of the inquiry.   *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).

This court has recommended Plaintiff's claims against the CDOC Defendants and Defendant Fisher be dismissed in their entirety; thus Plaintiff has not established that the defendants violated Plaintiff's constitutional or statutory rights.   Defendants Shoemaker, Baroni, Raemisch, and Fisher are entitled to qualified immunity in their individual capacities.

>    ***d.***      ***Supplemental Jurisdiction over State law Claims***

Defendant Fisher also argues this Court should not exercise supplemental jurisdiction over Plaintiff's state law negligence claims.

Plaintiff's remaining claim (Claim Six) arises under state law.   Pursuant to 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over claims related to claims over which it has original jurisdiction.   A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.   28 U.S.C. § 1367(c)(3); *see Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (stating that § 1367(c)(3) expressly permits a district court to decline to exercise supplemental jurisdiction over remaining state law claims after granting summary judgment in favor of defendant on federal law claims).   This Court does not have original jurisdiction over Plaintiff's negligence or malpractice claims because those claims arise under state law and there is no evidence that diversity jurisdiction is present.   The decision to exercise supplemental jurisdiction is discretionary, but courts should consider "the nature and extent of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction."   *Anglemyer v.*

*Hamilton Cnty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995) (quoting *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990)).

The court finds that the extent of pretrial proceedings does not outweigh the interests that would be served by having Plaintiff's state law claims tried in state court.   No scheduling conference has been held, and no discovery has taken place.   Judicial economy would be served by having the Colorado courts resolve issues of Colorado law, and the parties have an interest in having their Colorado law disputes decided in a court intimately familiar with that law. Further, the Tenth Circuit has "repeatedly recognized that this is the preferred practice."   *Gaston*, 297 F. App'x at 746; *see Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims."); *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (noting that there are "the best of reasons" for a district court to defer to a state court rather than retaining and disposing of state law claims).

Thus this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** as follows:

1.      Defendants Douglas County Sheriff Weaver, Aragon, and French's "Motion to Dismiss" (Doc. No. 35) should be **GRANTED** pursuant to Fed. R. Civ. P. 6 for failure to state a claim upon which relief can be granted, as Plaintiff's claims against these defendants are barred by the statute of limitations;

27

2.      Defendants Shoemaker, Baroni, and Raemisch's "Motion to Dismiss Complaint" (Doc. No. 37) should be **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted;

3.      "Defendant Karen Johnson, M.D.'s Motion to Dismiss " (Doc. No. 43) should be **GRANTED**, and the claims against Defendant Johnson should be dismissed without prejudice for lack of subject matter jurisdiction;

4.      "Heart of the Rockies Regional Medical Center's ["HRRMC"] Motion to Dismiss" (Doc. No. 46) should be **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted;

5.      Defendant Fisher's "Motion to Dismiss" (Doc. No. 75) should be **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted;

6.      Defendants Shoemaker, Baroni, Raemisch, and Fisher should be granted qualified immunity as to the claims against them in their individual capacities; and

7.      The Court should decline to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over Plaintiff's state claims for negligence and malpractice asserted against Defendant Fisher.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).   A general objection that

does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");   *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);   *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but*

see, *Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

 Dated this 20th day of August, 2014.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge
