IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02422-PAB-KMT

DELMART E.J.M. VREELAND, II,

　　　　Plaintiff,

v.

THOMAS C. FISHER, MD,
KAREN A. JOHNSON, MD,
DEA ARAGON,
JOAN M. SHOEMAKER,
HEART OF THE ROCKIES REGIONAL MEDICAL CENTER,
RICHARD RAEMISCH,
THE DOUGLAS COUNTY SHERIFF, MR. WEAVER,
KARI BARONI, CDOC/BVCF, H.S.A., and
MICHAEL FRENCH,

　　　　Defendants.

---

## ORDER

---

This matter is before the Court on the Recommendation of United States

Magistrate Judge Kathleen M. Tafoya (the "Recommendation") filed on August 20, 2014

[Docket No. 128].  The magistrate judge recommends that the Court grant motions to

dismiss filed by defendants Douglas County Sheriff David Weaver, Dea Aragon, and

Michael French (the "Douglas defendants") [Docket No. 35]; defendants Joan M.

Shoemaker, Kari Baroni, and Richard Raemisch (the "CDOC defendants") [Docket No.

37], defendant Karen A. Johnson, M.D. [Docket No. 43], defendant Heart of the

Rockies Regional Medical Center ("HRRMC") [Docket No. 46], and defendant Thomas

C. Fisher, M.D. [Docket No. 75].  On August 29, 2014, the Court granted plaintiff until

September 18, 2014 to file his objection to the Recommendation.  On September 22, 2014, Plaintiff filed his objections.  Docket No. 132.  Although untimely, in the interest of justice, the Court accepts the late-filed objections.

The Court will "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  In the absence of a proper objection, the Court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").  An objection is proper if it is specific enough to enable the Court "to focus attention on those issues–factual and legal–that are at the heart of the parties' dispute."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996).  In light of plaintiff's pro se status, the Court construes his filings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

## I. ANALYSIS

Plaintiff is an inmate at the Buena Vista Correctional Facility ("BVCF").  Docket No. 1 at 5.  Before his transfer to BVCF, plaintiff was incarcerated at the Douglas County Jail in Douglas County, Colorado from 2004 to 2008.  *Id.*  The relevant facts are set forth in detail in the Recommendation and will not be recited here except as relevant to the Court's de novo review.

**A.  The Douglas Defendants' Motion to Dismiss**

Plaintiff objects to the Recommendation's finding that his claims against the

Douglas defendants are barred by the applicable statute of limitations.  Plaintiff asserts

two claims against the Douglas defendants, both stemming from a letter (the "letter")

that the Douglas defendants allegedly wrote sometime in 2005 that stated that plaintiff

had a history of faking illnesses.  Docket No. 1 at 6.  In his first claim for relief, plaintiff

alleges that the Douglas defendants transmitted the letter to the Douglas County Jail

medical staff, which prevented plaintiff from receiving treatment between October 2004

and October 2008, when plaintiff was transferred to BVCF.  *Id.* at 22.  In his seventh

claim for relief, plaintiff alleges that the Douglas defendants, by placing the letter into

circulation, conspired to violate plaintiff's civil rights.  *Id.* at 40.  Plaintiff argues that,

contrary to the magistrate judge's findings that he was required to bring any claims

against the Douglas defendants no later than October 2010, he could not have brought

any claim until he suffered a physical injury due to the Douglas defendants' conduct,

and that plaintiff did not suffer any physical injury until 2012.  Docket No. 132 at 6-7

(citing 42 U.S.C. § 1997e(e)).

"State statutes of limitations applicable to general personal injury claims supply

the limitations periods for [42 U.S.C.] § 1983 claims."  *Beck v. City of Muskogee Police*

*Dep't*, 195 F.3d 553, 557 (10th Cir. 1999).  Therefore, in this case, plaintiff's § 1983

claims are subject to a two-year statute of limitations.  *See* Colo. Rev. Stat. § 13-80-

102(1)(g) ("All actions upon liability created by a federal statute where no period of

limitation is provided in said federal statute" and "regardless of the theory upon which

suit is brought . . . must be commenced within two years"); *see also Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994) (finding that "§ 1983 claims are best characterized as personal injury actions and we therefore apply" the State of Colorado's two-year statute of limitations) (citation omitted)).

Federal law, however, "governs the time of accrual of § 1983 claims." *Beck*, 195 F.3d at 557. Generally, a § 1983 claim "accrued when [plaintiff] knew or should have known that his constitutional rights had allegedly been violated." *Parkhurst v. Lampert*, 264 F. App'x 748, 749 (10th Cir. 2008) (unpublished) (citing *Beck*, 195 F.3d at 557). The issue of whether claims are time-barred by the applicable statute of limitations can be resolved on a motion to dismiss where the "answer is apparent on the face of the complaint." *Dummar v. Lummis*, 543 F. 3d 614, 619 (10th Cir. 2008).

Plaintiff's first claim against the Douglas defendants is that they prevented plaintiff from receiving medical treatment while housed in the Douglas County Jail between 2004 and 2008. Plaintiff argues that he did not have a physical injury before 2012, but only a mental or emotional injury. Docket No. 132 at 6-7. As a result, he states that the Prison Litigation Reform Act prevented him from filing any claim for mental or emotional injury until 2012, which prevents application of the two year statute of limitations. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought . . . for *mental or emotional injury* suffered while in custody without a prior showing of physical injury") (emphasis added). Plaintiff's own allegations, however, contradict the assertion that he had no physical injuries before 2012. Plaintiff alleges that he complained of numerous ailments including a tumor on his left testicle and "serious,

4

chronic stomach and intestine and appendix pain and cramps" while he was incarcerated at the Douglas County Jail.  Docket No. 1 at 6-7.  These allegations establish that plaintiff believed he was suffering from physical injuries that went untreated before leaving the Douglas County Jail in October 2008.  Thus, plaintiff "knew or should have known" of his claim that he was not receiving proper medical care at the Douglas County Jail no later than October 2008, *Parkhurst*, 264 F. App'x at 749, and plaintiff was required to bring this claim no later than October 2010.  Plaintiff's claim is therefore barred by the two-year statute of limitations.

Plaintiff argues that the continuing violation doctrine should apply to prevent application of the statute of limitations.  Docket No. 132 at 7.  The continuing violation doctrine, first employed in Title VII litigation, "would permit a plaintiff to challenge incidents that occurred outside of the statute of limitations if the incidents are sufficiently related and thereby constitute a continuing pattern of wrongful conduct." *Fogle v. Pierson*, No. 05-cv-01211-MSK-CBS, 2008 WL 821803 at *5 (D. Colo. Mar. 26, 2008) (citation and quotation omitted).  The Tenth Circuit has declined to decide whether the continuing violation doctrine applies to § 1983 claims.  *See Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011).  Moreover, the continuing violation doctrine would not preserve plaintiff's claims against the Douglas defendants.  Plaintiff argues that the continuing violation doctrine should apply because the letter "began its circulation in 2005" and it caused "an injury that is continuing."  Docket No. 132 at 7. The continuing violation doctrine, however, is "'triggered by continual unlawful acts, not by continual ill effects from the original violation.'" *Mata*, 635 F.3d at 1253 (quoting

5

*Parkhurst*, 264 F. App'x at 749).  Plaintiff makes no suggestion that he was not aware

of the letter before October 2008.  Accordingly, the Court finds no error with the

Recommendation of dismissal of plaintiff's claims against the Douglas defendants.

### B.  The CDOC Defendants' Motion to Dismiss

#### 1.  Claims Against Defendant Raemisch

Plaintiff does not object to dismissal of all claims against defendant Raemisch.

Docket No. 132 at 8.  In the absence of an objection, the district court may review a

magistrate judge's recommendation under any standard it deems appropriate.  *See*

*Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474

U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district

court review of a magistrate's factual or legal conclusions, under a *de novo* or any other

standard, when neither party objects to those findings").  With respect to plaintiff's

claims against defendant Raemisch, the Court has reviewed the Recommendation to

satisfy itself that there is "no clear error on the face of the record."[1]  Fed. R. Civ. P.

72(b), Advisory Committee Notes.  Based on this review, the Court has concluded that

the Recommendation is a correct application of the facts and the law.

#### 2.  Claims One and Three: Eighth Amendment Violation

Plaintiff objects to the Recommendation's finding that claims one and three

against defendants Shoemaker and Baroni fail to state a claim because plaintiff did not

allege personal participation in the violation of his constitutional rights.  Docket No. 132

_____

[1]This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review.  Fed. R. Civ. P. 72(b).

at 8-9.[2]  Plaintiff argues that he had repeated "personal face to face contact with Baroni" and that she has repeatedly denied care.  *Id.* at 8.  Plaintiff also argues that defendant Shoemaker has not only denied grievances, but also that he met and spoke with defendants Fisher and Baroni and decided to deny medical care.  *Id.* at 9.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights.  *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010).

The allegations described in plaintiff's objections appear nowhere in the complaint.  *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) ("[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived") (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)).  As to defendant Shoemaker, plaintiff's only specific allegations concern two denials of grievances.  *See* Docket No. 1 at 11-12.  But "[the] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

As to defendant Baroni, the complaint contains only conclusory allegations that

---

[2]Plaintiff's first claim for relief purports to assert claims for a violation of the Fifth and Fourteenth Amendments in addition to the Eighth Amendment.  Docket No. 1 at 22. Plaintiff's claim, however, is based entirely on the denial of medical care, and contains no facts that support an inference that his rights under the Fifth and Fourteenth Amendments were violated.  Thus, the Court construes plaintiff's first claim as a claim for violation of the Eighth Amendment.

defendant Baroni, in connection with other defendants, denied plaintiff medical care. Docket No. 1 at 19 ("[d]efendant Fisher, defendant Shoemaker and defendant Baroni have all denied medical treatment and or any tests whatsoever"), 22 (plaintiff was "denied medical care by defendant Fisher, Shoemaker and Baroni from October 2008 until the present"), 41 ("defendants Baroni and Shoemaker refuse any up to date testing at all"). The Court is unable to determine from plaintiff's allegations any specific acts–either denial of grievances or otherwise–that defendant Baroni is alleged to have performed. Thus the Court finds no error in this aspect of the Recommendation.

### 3. Claims Three and Seven: Conspiracy

Plaintiff does not object to the Recommendation's holding as to claims three and seven against the CDOC defendants for conspiracy. Instead, plaintiff's objections state that plaintiff "relies only upon his Amended Complaint, (Doc[ket] No. 103-1) as it is written if it is accepted by the Court." Docket No. 132 at 9. Plaintiff's Motion for Leave to Amend Complaint was denied on August 22, 2014, one month before plaintiff submitted his objections. Docket No. 129. As plaintiff has not provided an objection specific enough to enable the Court "to focus attention on those issues–factual and legal–that are at the heart of the parties' dispute," *2121 East 30th Street*, 73 F.3d at 1059, the Court has reviewed the Recommendation and is satisfied that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes.

### C. Defendant Johnson's Motion to Dismiss

Plaintiff objects to the Recommendation's finding that defendant Johnson was not a state actor because she was a private physician not under contract with the

CDOC.  Docket No. 132 at 10.  Plaintiff argues in his objections that defendant Johnson "was paid by the state to conduct the surgery" and "was paid by HRRMC to conduct the surgery.  The surgery was for profit, [and defendant Johnson] was not forced to do it, she was asked to do it and agreed to do it."  *Id.*

The Supreme Court has held that a physician employed by the state "to provide medical services to state prison inmates" can be considered a state actor for the purposes of § 1983.  *West v. Atkins*, 487 U.S. 42, 54 (1988).  It is an open question, however, whether a private physician such as defendant Johnson who treats an inmate on a one-time emergency basis can be considered a state actor for § 1983 purposes.  *Compare Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1994) (holding that "a physician who treats a prisoner acts under color of state law even though there was no contractual relationship between the prison and the physician") *with Sykes v. McPhillips*, 412 F. Supp. 2d 197, 203 (N.D.N.Y. 2006) (holding that a hospital that is compelled by law to provide emergency services to inmates is not a state actor).

The Court need not resolve this issue.  Even if defendant Johnson were considered a state actor, plaintiff fails to state a claim against her for violation of the Eighth Amendment.  The Eighth Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A claim for deliberate indifference has both an objective and a subjective component.  To satisfy the objective component, a prisoner must demonstrate that his medical need is

"objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A

medical need is sufficiently serious if "it is one that has been diagnosed by a physician

as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224

(10th Cir. 1999) (citation omitted).  To satisfy the subjective component, a prisoner must

demonstrate that the defendant acted with a "sufficiently culpable state of mind."

*Farmer*, 511 U.S. at 834.  "'[D]eliberate indifference' is a stringent standard of fault."

*Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  "A showing of simple or

even heightened negligence will not suffice." *Id.* at 407*; see also Giron v. Corrs. Corp.

of Am.*, 191 F.3d 1281, 1286 (10th Cir. 1999).  Instead, the defendant must "know[] of

and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

That is, "the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Id.*

As defendant Johnson argues, Docket No. 43 at 8, plaintiff does not allege that

she failed to treat him at HRRMC.  Rather, plaintiff alleges that, after he was returned to

BVCF, he wrote letters to defendant Johnson that complained of the post-surgery

complications including "swelling, gas, pain, stiffness, serious bladder problems,

continuous diarrhea on a daily basis, weight loss . . . [and] serious daily pains and

nausea" and that defendant Johnson provided no follow-up treatment.  Docket No. 1 at

30.  This fails to state a claim for deliberate indifference.  Even assuming plaintiff meets

the objective component of pleading deliberate indifference, plaintiff pleads no facts

that suggest that defendant Johnson was capable of ordering BVCF to refer plaintiff to her for a follow-up visit. *See Wright v. Genovese*, 694 F. Supp. 2d 137, 156 (N.D.N.Y. 2010) (holding that a surgeon "can not be liable under Section 1983 for not getting involved . . . in plaintiff's post-operative care" where he "had no control over if and when [the prison] would refer a[n] inmate to him for a follow-up examination after the inmate had been returned to the care of the prison medical staff"); *see also Dorn v. Powers*, 2011 WL 6890466 at *5 (S.D. Ill. Dec. 30, 2011) (dismissing 1983 claim of deliberate indifference against hospital physicians where "there is nothing in the allegations of the complaint to suggest that [the physicians] had . . . any way of exercising control over [plaintiff's] treatment in the prison").  Because plaintiff fails to allege that defendant Johnson was even *capable* of providing him with post-operative care, he cannot satisfy the subjective component of a claim for deliberate indifference based on denial of medical care.

### D.  Defendant HRRMC's Motion to Dismiss

Plaintiff objects to the Recommendation's finding that HRRMC cannot be held liable under § 1983 based on the doctrine of *respondeat superior*.  Docket No. 132 at 10.  The Recommendation raised the issue of *respondeat superior sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and found that plaintiff had not stated a claim against HRRMC.  Docket No. 128 at 16.  Plaintiff argues that HRRMC has a custom and policy of denying prisoners follow-up medical care after surgery.  *Id.*

"Dismissal of a pro se complaint for failure to state a claim [under 28 U.S.C. § 1915(e)(2)(B)(ii)] is proper only where it is obvious that the plaintiff cannot prevail on

the facts he has alleged and it would be futile to give him an opportunity to amend."
*Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001) (internal quotation omitted).  "In
determining whether a dismissal is proper, [the Court] must accept the allegations of
the complaint as true and construe those allegations, and any reasonable inferences
that might be drawn from them, in the light most favorable to the plaintiff."  *Gaines v.
Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).

"[Section] 1983 liability for an entity cannot be predicated on *respondeat
superior*."  *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1211 (10th
Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  Rather, liability
for an entity under § 1983 must be based on "a single decision by policymakers," *id.* at
1212, or an entity's wrongful policy or custom.  *See Graves v. Thomas*, 450 F.3d 1215,
1218 (10th Cir. 2006).

The complaint contains no allegations of HRRMC's supposed wrongful custom
or policy or the action of a single decision by a policymaker.  Moreover, any amendment
to allege a wrongful policy of denying prisoners follow-up medical care after surgery
would be futile.  As HRRMC argues, Docket No. 46 at 9, HRRMC, much like an
individual doctor, would have no authority to mandate that BVCF return an inmate to its
care after the inmate was discharged back into prison custody.  *Wright*, 694 F. Supp. 2d
at 156; *Dorn*, 2011 WL 6890466 at *5.  Thus, even if plaintiff could allege that HRRMC
had a policy of ignoring inmate complaints of post-surgery complications, plaintiff could
not meet the subjective component of deliberate indifference.  Thus the Court finds no
error in this aspect of the Recommendation.

**E.  Defendant Fisher's Motion to Dismiss**

Plaintiff objects to the finding that his claims as to Dr. Fisher's denial of medical care before September 5, 2011 are barred by the statute of limitations and that he failed to state a claim under the Eighth Amendment.  Docket No. 132 at 11-16.  With respect to the statute of limitations, plaintiff argues that the continuing violation doctrine applies to his § 1983 claim.

*1.  The Continuing Violation Doctrine*

Plaintiff argues that the continuing violation doctrine applies to his § 1983 claim, and thus that the magistrate judge erred in finding that plaintiff could not sue based on any instances where care was denied before September 5, 2011.  Once again, the continuing violation doctrine provides no help to plaintiff even if it applies to his claims.  Courts that apply the continuing violation doctrine to § 1983 claims do so where a "series of events gives rise to a cumulative injury."  *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2001); *see also Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (finding that the continuing violation doctrine applies "to a series of predicate acts forming the basis for a single claim").  The continuing violation doctrine, however, does not apply to "repeated events [that give] rise to discrete injuries," *Heard*, 253 F.3d at 320, to "isolated or sporadic acts," or to situations where "plaintiffs are aware of the injury at the time it occurred."  *Muhammad v. Court of Common Pleas of Allegheny County, Pa.*, 483 F. App'x 759, 762 (3d. Cir. 2012).

Plaintiff's allegations specific to Dr. Fisher are as follows.  Sometime before October 15, 2009, Dr. Fisher reported that plaintiff had no medical disabilities even

13

though plaintiff claimed he was disabled in his right hand and suffered from asthma,
which resulted in plaintiff being assigned a work detail that should have been precluded
due to his disability.  Docket No. 1 at 10.  Sometime after October 14, 2009, Dr. Fisher
denied a disability accommodation after plaintiff complained that he was legally blind,
required lifting restrictions due to disability in his right hand, had limited mobility due to
surgery and an epydidmal cyst or tumor, and had some digestive issues with his
"stomach/intestine/appendix."  *Id.* at 11.  At some point before December 2009, Dr.
Fisher examined plaintiff, but told plaintiff that he was only told to examine plaintiff's
right hand and would not examine plaintiff for any other complaint.  *Id.* at 11-12.  In
January 2010, Dr. Fisher instructed plaintiff to comply with AR # 700-21 pursuant to
plaintiff's request that he be allowed to pay for a private doctor to perform a full
examination on plaintiff.  *Id.* at 12.  At a meeting in March 2010, Dr. Fisher expressed
that he did not believe an ultrasound reading that showed that plaintiff suffered from
"either a testicle tumor . . . or[] an epydidmal cyst."  *Id.* at 13.  At the same meeting, Dr.
Fisher explained that he had received the Douglas defendants' letter and, based on
their statement that plaintiff had a history of faking illness, he did not believe that
plaintiff suffered from asthma and had no digestive issues.  *Id.*  As a result of the
meeting, plaintiff was assigned to a different person to examine him for digestive
issues.  *Id.* at 14.  At some point before 2012, Dr. Fisher prescribed plaintiff medications
to treat irritable bowel syndrome.  *Id.* at 18.  In February 2012, Dr.  Fisher refused to
allow plaintiff to go to the hospital.  *Id.* at 15.  Plaintiff was eventually taken to the
hospital after a delay of about two hours when a nurse insisted that he be sent there

immediately.  *Id.*  After plaintiff returned to the prison from his surgery, Dr. Fisher

refused to grant any pain medications or test for post-surgery complications.  He

prescribed medication for irritable bowel syndrome, told plaintiff that post-surgery

complications were "not his problem," and indicated he would inform plaintiff's medical

providers at HRRMC of plaintiff's complications.  *Id.* at 18.  In June or July of 2013, it

was discovered that plaintiff had been suffering from a post-surgical infection.  *Id.* at 19.

Although plaintiff's allegations against Dr. Fisher span several years and concern

events that occurred before and after the expiration of the statute of limitations, they do

not state a continuing violation leading to a single, cumulative injury.  Rather, plaintiff's

injuries are varied, ranging from a mistaken denial of a disability accommodation,

Docket No. 1 at 10-11, to failure to prescribe an inhaler for asthma, *id.* at 13-14, to a

delayed emergency surgery due to appendicitis.  *Id.* at 15.  These allegations did not

lead to a single injury.  Notably, although the stone that grew in plaintiff's appendix

could be considered a cumulative injury due to repeated denial of treatment, plaintiff

alleges that Dr. Fisher was *removed* from treating his digestive issues in March 2010

and that plaintiff was assigned to another medical provider for his complaints related to

digestive issues after that date.  *Id.* at 13.  Moreover, the complaint contains no

allegations that Dr. Fisher denied plaintiff treatment for digestive issues between March

2010 and the date of plaintiff's emergency surgery.[3]  Because plaintiff's claims are "of a

---

[3]While plaintiff argues in his objections that he complained of stomach, intestine, and appendix claims "at least 50 times" to Dr. Fisher, either verbally and in writing, Docket No. 132 at 17, the complaint pleads no facts concerning such a high volume of direct complaints concerning plaintiff's digestive issues, and alleges no facts showing any such complaints between March 2010 and February 2012.

discrete nature," *Silverstein v. Fed. Bureau of Prisons*, No. 07-cv-02471-PAB-KMT,

2012 WL 4033756 at *2 (D. Colo. Sept. 13, 2012), and do not relate a "series of

predicate acts forming the basis for a single claim," *Shomo*, 579 F.3d at 182, plaintiff

has not stated a claim due to any continuing violation.  Thus, the Court looks only to

plaintiff's allegations concerning events that took place after September 5, 2011 to

determine whether plaintiff has stated a claim against Dr. Fisher.

### 2.  Plaintiff's Eighth Amendment Claim

Plaintiff argues that he has met the standard of deliberate indifference required

to state a claim under the Eighth Amendment.  Docket No. 132 at 17-18.  The Court

finds that plaintiff has done so, but only with respect to the allegations concerning Dr.

Fisher's treatment of plaintiff after his surgery.

Before surgery, plaintiff's only allegation specific to Dr. Fisher is that he delayed

plaintiff's trip to the hospital by approximately two hours.  Docket No. 1 at 15.  However,

"[d]elay in medical care only constitutes an Eighth Amendment violation where the

plaintiff can show that the delay resulted in substantial harm."  *Sealock v. Colo.*, 218

F.3d 1205, 1210 (10th Cir. 2000).  Plaintiff alleges no harm attributable to this two-hour

delay.

With respect to plaintiff's post-surgery treatment, plaintiff alleges that Dr. Fisher

refused to see plaintiff for some time and "fought" with another member of the medical

staff at BVCF to avoid seeing plaintiff.  Docket No. 1 at 29.  Plaintiff further alleges that

when Dr. Fisher did see him, Dr. Fisher told plaintiff that his symptoms were normal, *id.*

at 29, prescribed the same medications for irritable bowel syndrome that he had

prescribed before the surgery, and told plaintiff that he would not treat him because "surgery complications were not [Dr. Fisher's] problem and were the problem of defendants Dr. Johnson and [HRRMC]." *Id.* at 18.  Plaintiff further alleges that Dr. Fisher refused to provide plaintiff bandages for his surgical stitches and refused to conduct any testing to determine the nature of plaintiff's surgery complications, *Id.* at 34, and that he never received any follow-up treatment from Dr. Johnson or HRRMC. *Id.* at 18.  Eventually, after Dr. Fisher was no longer employed with BVCF, blood tests revealed that plaintiff suffered from an infection that had been allowed to fester for 17 months following his surgery.  *Id.* at 19.

The Court finds that the complaint sufficiently alleges that plaintiff had a serious medical need.  The risk of post-operative infection meets the standard of a serious medical need obvious to a lay person.  *See Griffin v. Kern Med. Center*, 2011 WL 4344133 at *4 (E.D. Cal. Sept. 14, 2011) (holding that a risk of infection for a severe cut was obvious and failure to provide bandages stated a claim for deliberate indifference). Plaintiff's allegations are sufficient to meet the objective prong of the Eighth Amendment analysis.

As to the subjective component, construing plaintiff's allegations liberally, the Court finds that the complaint contains sufficient "direct or inferential allegations" that Dr. Fisher acted with deliberate indifference to state a claim.  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  Plaintiff alleges that Dr. Fisher informed him that post-surgery complications were not his problem, but rather were the problem of the medical providers at HRRMC who performed plaintiff's surgery.  Docket No. 1 at 18.

Plaintiff further alleges that he never received any follow-up treatment from HRRMC. *Id.* Thus, affording plaintiff the benefit of reasonable inferences, plaintiff has alleged that Dr. Fisher refused to test him for complications resulting from his surgery and failed to refer him, despite saying that he would, to the providers who Dr. Fisher believed should perform any follow-up testing.

With respect to post-surgical care, the Recommendation noted that Dr. Fisher told plaintiff that the symptoms he was experiencing were normal, Docket No. 128 at 24, and held that Dr. Fisher had merely exercised his considered medical judgment. *Id.* (citing *Self*, 439 F.3d at 1232). The Recommendation did not consider plaintiff's allegation that Dr. Fisher openly stated that he was refusing to treat plaintiff for post-surgery complications and failed to provide basic preventative care such as bandages.[4] As such, the Recommendation erred in finding that plaintiff did not state a claim for violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

### 3. Plaintiff's Conspiracy Claim

The magistrate judge discussed plaintiff's conspiracy claim against Dr. Fisher in the context of the CDOC defendants' motion to dismiss. Docket No. 128 at 12-13. As discussed above, plaintiff's objections to the Recommendation that his conspiracy claims be dismissed state only that plaintiff "relies only upon his Amended Complaint, (Doc[ket] No. 103-1) as it is written if it is accepted by the Court." Docket No. 132 at 9.

---

[4]Dr. Fisher's response to plaintiff's objection reiterates that he simply exercised his considered medical judgment in determining that plaintiff's post-operative symptoms were normal. Docket No. 134 at 11. Dr. Fisher does not, however, address plaintiff's claims that he told plaintiff he would not be providing any care for post-operative symptoms because that was the responsibility of the surgeons who performed plaintiff's operation.

The amended complaint, however, was rejected on August 22, 2014, one month before plaintiff submitted his objections.  Docket No. 129.  Consequently, the Court has reviewed the Recommendation and is satisfied that there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.

### 4.  Plaintiff's Medical Malpractice Claim

Having found that plaintiff has stated an Eighth Amendment claim against Dr. Fisher, the Court exercises supplemental jurisdiction over plaintiff's state law claim for medical malpractice pursuant to 28 U.S.C. § 1367(a), as that claim is part of the same case or controversy as plaintiff's Eighth Amendment claim.

Dr. Fisher claims that plaintiff failed to file a timely Notice of Intent to Sue as required by the Colorado Governmental Immunity Act ("CGIA") and that this requirement is a jurisdictional bar to plaintiff's suit.  Docket No. 75 at 14 (citing Colo. Rev. Stat. § 24-10-109).  In response, plaintiff argues that he did, in fact, provide pre-suit notice and has "records, and receipts" that demonstrate his compliance.  Docket No. 97 at 22.  Plaintiff did not, however, attach any documentary evidence showing compliance with the notice provision of the CGIA.

 "The CGIA notice of claim provision is both a condition precedent and a jurisdictional prerequisite to suit under the CGIA, must be strictly applied, and failure to comply with it is an absolute bar to suit."  *City and County of Denver v. Crandall*, 161 P.3d 627, 634 (Colo. 2007).  Nevertheless, the Colorado Supreme Court has held that compliance with the notice requirements is not to be interpreted as "strict compliance," but rather as "substantial compliance."  *Woodsmall v. Reg'l Transp. Dist.*, 800 P.2d 63,

69 (Colo. 1990); *see also Crandall*, 161 P.3d at 632 n.5 (contrasting the notice's timeliness, which is subject to strict compliance, with "the adequacy of the notice's contents [, which] is subject to a substantial compliance standard").  Where a party fails to plead compliance with the notice requirements of the CGIA, but it is not clear from the record that he or she cannot cure the deficient pleading by amendment, the complaint is to be dismissed without prejudice.  *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 842 (10th Cir. 2003).

Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint.  "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction."  *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).  To the extent a defendant attacks the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts."  *SK Finance SA v. La Plata Cnty.*, 126 F.3d 1272, 1275 (10th Cir. 1997).  "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such

circumstances." *Id.*

Here, Dr. Fisher attaches an affidavit from Stacy Mortenson, who serves as "custodian of the records for all notices of claims and intents to sue filed pursuant to C.R.S. § 24-10-109 with the Office of the Attorney General, State of Colorado." Docket No. 75-1 at 1, ¶2.  According to Ms. Mortenson's review of her records, plaintiff has filed only a single Notice of Intent to Sue regarding an unrelated claim.  *Id.* at 2 ¶¶ 4-5. Plaintiff responds that he has filed four different notices, but fails to attach any of them. As such, plaintiff has not carried his burden to show that the Court has subject matter jurisdiction over his medical malpractice claim, and this claim is properly dismissed without prejudice.

### F.  Qualified Immunity

Plaintiff provides only a cursory objection to the magistrate judge's holdings that defendants are entitled to qualified immunity, namely, that "the Complaint raises issues which the Recommendation did not discuss."  Docket No. 132 at 19.  This is not specific enough to enable the Court "to focus attention on those issues–factual and legal–that are at the heart of the parties' dispute," *2121 East 30th Street*, 73 F.3d at 1059.  With respect to the CDOC defendants, the Court has reviewed the Recommendation and is satisfied that there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.

Dr. Fisher, however, is not entitled to qualified immunity.  The Court's analysis of qualified immunity in the context of a Rule 12(b)(6) motion is a two step process.  The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff

sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

The question of whether the constitutional right was clearly established must be asked in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). In order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), *overruled on other grounds by Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998).

The Tenth Circuit has held that "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right." *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005); *see also Estate of Booker v. Gomez*, 745 F.3d 405, 430 (10th Cir. 2014) (rejecting qualified immunity defense because "deliberate[] indifferen[ce] to [a] serious medical need . . . would violate clearly established law").

22

Thus, qualified immunity is inappropriate where a physician fails to provide treatment where "medical protocol requires referral or minimal diagnostic testing" to confirm or rule out conditions that could cause a medical emergency. *Al-Turki v. Robinson*, --- F.3d ----, 2014 WL 3906851 at *4 (10th Cir. 2014). At the time Dr. Fisher allegedly refused plaintiff care, plaintiff was recovering from an emergency surgery. As discussed above, a basic level of monitoring for post-operative infection rises to the level of an obvious and serious medical need. Thus, the alleged Eighth Amendment violation was clearly established at the time it occurred, and Dr. Fisher is not entitled to qualified immunity.

## II. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 128] is **ACCEPTED** in part. It is further

**ORDERED** that defendants Douglas County Sheriff David Weaver, Dea Aragon, and Michael French's Motion to Dismiss [Docket No. 35] is **GRANTED**. It is further

**ORDERED** that defendants Joan M. Shoemaker, Kari Baroni, and Richard Raemisch's Motion to Dismiss Complaint [Docket No. 37] is **GRANTED**. It is further

**ORDERED** that defendant Karen Johnson, M.D.'s Motion to Dismiss [Docket No. 43] is **GRANTED**. It is further

**ORDERED** that defendant Heart of the Rockies Regional Medical Center's Motion to Dismiss [Docket No. 46] is **GRANTED**. It is further

**ORDERED** that defendant Thomas C. Fisher, M.D.'s Motion to Dismiss

Complaint [Docket No. 75] is **GRANTED** in part and **DENIED** in part.  It is further

ORDERED that plaintiff's first, third, fourth, fifth, seventh, and eighth claims for

relief are dismissed with prejudice.  It is further

ORDERED that plaintiff's sixth claim for relief is dismissed without prejudice.

Plaintiff's second claim for relief remains pending.

DATED September 29, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge