IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–02422–PAB–KMT

DELMART E.J.M VREELAND, II,
o
        Plaintiff,

v.

THOMAS C. FISHER, MD,

        Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Kathleen M. Tafoya**

        This matter comes before the court on "Defendant Thomas C. Fisher's Motion for

Summary Judgment" (Doc. No. 254, filed August 6, 2015).   Plaintiff did not file a substantive

response.[1]

        Also before the court is Plaintiff's "Motion for Leave to Amend and to Supplement

Complaint" (Doc. No. 184, filed April 3, 2014).   Defendant Fisher filed his response on June 12,

2015 (Doc. No. 227), and Plaintiff filed his reply on July 16, 2015 (Doc. No. 240).   Upon this

court's order, former defendant Kari Baroni filed her response on February 19, 2016 (Doc. No.

_____

1  Rather, Plaintiff filed a response "incorporat[ing] herein all motions filed on 2/16/2016
as if fully set forth herein."   (Doc. No. 321.)   This is improper under Section III.F of
District Judge Philip A. Brimmer's Practice Standards (Civil cases).

1

332), and former defendant Karen Johnson filed her response on February 19, 2016 (Doc. No. 320).

## STATEMENT OF CASE

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 asserting violations of his constitutional rights.  (*See* Doc. No. 1, filed September 5, 2013.)   Plaintiff's remaining claim is his second claim for relief asserted against Defendant Fisher for allegedly violating Plaintiff's Eighth Amendment rights by denying him medical treatment at Buena Vista Correctional Facility ("BVCF") within the Colorado Department of Corrections ("CDOC").  (*Id.* at 24–26.)   Judge Brimmer dismissed this claim except as it pertains to Plaintiff's treatment following an appendectomy performed on February 28, 2012.  (*See* Doc. No. 136 at 15–18, 23–24; Doc. No. 1 at 15–16.)   Plaintiff alleges Defendant Fisher refused to see Plaintiff for some time and "fought" with another member of the medical staff at BVCF to avoid seeing Plaintiff.   (Doc. No. 1 at 29.) Plaintiff further alleges that when Defendant Fisher did see him, Defendant Fisher told Plaintiff that his symptoms were normal (*id.* at 29), prescribed the same medications for irritable bowel syndrome that he had prescribed before the surgery, and told Plaintiff that he would not treat him because "surgery complications were not [Defendant Fisher's] problem" and, instead, were the problem of the treaters at Heart of the Rockies Regional Medical Center ("HRRMC"), where Plaintiff had his surgery (*id.* at 18).   Plaintiff alleges he "started to get sicker and sicker and lost more and more weight."   (*Id.*)   Plaintiff further alleges that Defendant Fisher refused to provide Plaintiff bandages for his surgical stitches and refused to conduct any testing to determine the nature of Plaintiff's surgery complications.   (*Id.* at 34.)   Plaintiff alleges after Defendant Fisher

was no longer employed with BVCF, blood tests revealed that Plaintiff suffered from an infection that had been allowed to fester for 17 months following his surgery.   (*Id.* at 19.)   Plaintiff alleges he is "suffering and possibly dying due to infection and complication due to surgery and other denials of medical care."   (*Id.*)

## STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

1.      When Plaintiff was sent to HRRMC on February 28, 2012, a CT scan of the Plaintiff's abdomen and pelvis was performed that showed acute appendicitis and a 9mm calculus at the origin of the appendix.   (Doc. No. 254-4.)

2.      A laparoscopic appendectomy related to the acute appendicitis was performed on Plaintiff by Karen Johnson, M.D. of the HRRMC on February 28, 2012.   The Operative Note reflects that "[t]he wounds were dressed with Steri-Strips and dry sterile dressings" and the "skin incisions were closed with subcutaneous absorbable sutures."   (Doc. No. 254-5.)

3.      The Surgical Pathology Report conducted following the laparoscopic appendectomy showed marked acute appendicitis, no fecoliths [*i.e.*, hardened stool] identified, and no perforation identified.   (Doc. No. 254-6.)

4.      On March 13, 2012, Defendant Fisher examined Plaintiff, and Plaintiff advised Defendant Fisher that he was eating well with regular bowel movements.   He had no severe pain

---

2  Again, Plaintiff has failed to comply with District Judge Brimmer's Practice Standards (Civil), which require any party opposing a motion for summary judgment to, in a section of the brief required by rule 56.1(a) of the United States District Court for the District of Colorado Local Rules of Practice (Civil) styled "Response to Statement of Undisputed Material Facts," admit or deny the asserted material facts set forth by the movant.

or cramps, fevers, or other symptoms.   Defendant Fisher noted "No abdominal tenderness[,] not distended[,] active [bowel sounds], healing and without tenderness."   (Doc. No. 254-7.)

5.      During the month of March 2012, Plaintiff did not submit any kites regarding any infection or other complications related to the appendectomy.   (Doc. No. 254-8 at 8–9.)

6.      Lab tests performed on March 23, 2012 showed Plaintiff's Complete Blood Count ("CBC") was within normal limits.   (Doc. No. 254-9.)

7.      The white blood cell will not be within normal limits if there is an infection.   (See Doc. No. 254-11 at 15.)

8.      On May 15, 2012, Plaintiff reported to Defendant Fisher that he had minimal bowel problems since the appendectomy and was able to eat anything except onions.   Defendant Fisher reported that Plaintiff's labs were normal, except low Globulin fraction.   Plaintiff reported that he was asymptomatic and pleased with how he was feeling.   Defendant Fisher noted that he would repeat the lab work (lipids) in three months.   (Doc. No. 254-15.)

9.      On September 11, 2012, Plaintiff presented to Defendant Fisher and denied vomiting and abdominal pain, advising that he was eating well and gaining weight.    (Doc. No. 254-16.)

10.      On December 3, 2012 (over ten months post-appendectomy), Plaintiff complained of right lower quadrant abdominal cramps and some bloating feeling that radiated up into the right upper quadrant.   Plaintiff denied constipation and abnormal bowel movement.   Defendant Dr. Fisher performed an abdominal examination of Plaintiff that showed mild right lower quadrant bloating, but minimal tenderness and active normal bowel sounds and no right upper quadrant

tenderness.   Defendant Fisher ordered lab tests to check Plaintiff's liver function test for gallbladder and prescribed heartburn and antacid medication.   (Doc. No. 254-2.)

11.      Lab tests ordered by Defendant Fisher were performed on December 4, 2012 and were entirely within normal limits.   (*Id.*; Doc. No. 254-17.)

12.      Defendant Fisher's last day of employment with the CDOC was December 24, 2012.  (Doc. No. 254-18.)

13.      Between March 1, 2012 and December 2012, the CDOC medical records reflect that Plaintiff's weight only fluctuated between 168 pounds on March 1, 2012 to 165 pounds on December 28, 2012.   (*See* Doc. Nos. 254-2, 254-7, 254-15, at 1, 254-16.)

14.      Between March 2012 and December 2012, Plaintiff purchased the following food items, inter from the CDOC canteen: beef summer sausage (131), chili with beans (77), chili with rice and beans (16), pepperoni (16), refried beans (49), jalapeno squeeze cheese (2), pepper jack cheese (6), pizza kit (12), habanero chips (2), combo pizzeria (5), Ruffles potato chips (7), Tostitos ( 10), mustard ( 12), kosher dill pickles (5), Fritos corn chips (5), microwave popcorn (20), mozzarella cheese (7), nacho tortilla chips (3), and Atomic fireballs (3).   (*See* Doc. No. 254-19.)

15.      On July 2, 2013 (over 17 months post-appendectomy), Plaintiff advised that he had diarrhea prior to appendicitis, but had had no diarrhea or constipation since the appendectomy. (Doc. No. 254-20.)

16.      On July 7, 2013, Plaintiff had fecal occult blood tests that were negative.   (Doc. No. 254-21.)  Lab tests performed on July 10, 2013 showed Plaintiff's CBC was within normal limits.   (Doc. No. 254-22.)

17.     On July 15, 2013, Nurse Practitioner Christine M. Sturgeon at BVCF saw Plaintiff and noted Plaintiff's CBC was within normal limits, and his urinalysis cultured "small amount of enterococcus."   Nurse Sturgeon noted with Plaintiff's "[history] of prostatis will treat with Cipro x 21 days. Culture results 2000 colonies/ml.   New Prescription: Ciproflaxin HCI (Cipro) - 500 mg - take 1 tablet by mouth twice daily for infection."   (Doc. No. 254-23.)

18.     On July 23, 2013, an x-ray was taken of Plaintiff's abdomen which was interpreted by Conor J. Heaney, M.D. of the Pueblo Radiological Group as follows: "Non-specific bowel gas pattern. Scattered gas in non-distended small and large bowel. No evidence for obstruction. No acute findings."   (Doc. No. 254-24.)

## LEGAL STANDARDS

### 1.     *Summary Judgment Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."   *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).   The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."   *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).   A disputed fact is "material" if "under the substantive law it

6

is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010).   The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517.   Because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").   At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### 2.      *Motion to Amend Complaint*

Pursuant to Federal Rule of Civil Procedure 15(a), a court should allow a party to amend its pleadings "when justice so requires."   Such a grant of leave is within the discretion of the trial court.   *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).   Refusal to grant leave to amend is justified by reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."   *Minter*, 451 F.3d at 1204 (quoting *Foman v. Davis*, 371 U.S. 178 (1962)).

## ANALYSIS

### 1.      *Motion for Summary Judgment*

The Eighth Amendment prohibits cruel and unusual punishment.   U.S. Const. amend VIII. As such, it requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] must 'take reasonable measures to guarantee the safety of the inmates.'"   *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).   The court's analysis of Plaintiff's Eighth Amendment claims involves both an objective and subjective component.   *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991).   Defendant argues no genuine issue of material fact exists to satisfy either component.

### 1.      *Objective Component*

As to the objective component, the court considers whether Plaintiff has been deprived of a sufficiently serious basic human need.   "[A] medical need is considered 'sufficiently serious' if

the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.' " *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)).

### A. *Alleged Infection*

In his Complaint, Plaintiff alleges after Defendant Fisher was no longer employed with BVCF, blood tests revealed that Plaintiff suffered from an infection that had been allowed to fester for 17 months following his surgery.   (Doc. No. 1 at 19.)   Plaintiff alleges he is "suffering and possibly dying due to infection and complication due to surgery and other denials of medical care." (*Id.*)

Defendant's expert, Chief Medical Officer Susan Tiona, M.D., states that Plaintiff's allegation that his post-appendectomy recovery was complicated by an infection that festered and went undetected for 17 months is "not factual."   (Doc. No. 254-11 at 19.)   Dr. Tiona explains that

> Plaintiff was seen numerous times and for varying complaints in the medical clinic. At no time did he exhibit signs or symptoms of an infection.   On 7-2-2013, the Plaintiff presented to the medical clinic complaining of getting up multiple times during the night to urinate and having a slow urinary stream.   As part of the evaluation, the provider (not Dr. Fisher) ordered tests to rule out a bladder infection.   Those tests actually came back negative.   The only reason Plaintiff was given antibiotics [at that time] is because of a very small growth of Enterococcus (bowel bacteria) in his urine, which is almost certainly a contaminant, is not clinically and is in no way consistent with an infection.

(*Id.* at 19–20.)   Defendant presents undisputed evidence that lab tests performed on March 23, 2012 (a little over three weeks post-appendectomy) and on July 10, 2013 (over 17 months post-appendectomy) showed Plaintiff's CBC was within normal limits.   (Doc. Nos. 254-9 and

254-22.)   Dr. Tiona explains that the white blood cell will not be within normal limits if there is an infection.   (*See* Doc. No. 254-11 at 15.)

### B.     Alleged Weight Loss

Plaintiff also alleges that, due to Defendant Fisher's failure to properly treat him after his appendectomy, Plaintiff "started to get sicker and sicker and lost more and more weight."   (Doc. No. 1 at 19.)

Plaintiff's allegation is belied by the undisputed evidence submitted by Defendant that shows between March 1, 2012, and December 2012, Plaintiff's weight only fluctuated between 168 pounds on March 1, 2012 to 165 pounds on December 28, 2012 (with weights of 161, 162, 164 (twice), 166, and 160 in the interim).   (*See* Doc. Nos. 254-2, 254-7, 254-15, at 1, 254-16.)   On September 11, 2012, Plaintiff presented to Defendant Fisher and denied vomiting and abdominal pain, advising that he was eating well and gaining weight.   (Doc. No. 254-16.)   The undisputed evidence shows that Plaintiff had an insignificant weight loss of three pounds over the nine months following his appendectomy on February 28, 2012, and December 24, 2012, the last day of Defendant Fisher's employment with the CDOC.

### C.     *Band-Aids*[3]

Plaintiff also alleges that Defendant Fisher refused to provide Plaintiff bandages for his

surgical stitches.   (*Id.* at 34.)

Dr. Tiona states as follows:

> Laparoscopic appendectomy is a standard procedure. One 1-cm incision and two
> puncture wounds are generated during the procedure.   The wounds are closed with
> sutures below the skin which absorb on their own and do not require removal.
> Occasionally, the cut end of a suture will poke through the wound edge, but this is
> normal and goes away as the suture absorbs.   It is standard that the wounds are
> covered with Steri-strips (a type of bandaid), but no other wound care is typically
> required after this straightforward procedure.

(Doc. No. 254-11 at 12.)   Dr. Tiona also states that Plaintiff "had no complications with respect to

wound healing [or] infection."   (*Id.* at 20.)   Defendant submits undisputed evidence that Plaintiff

submitted no kites during the month of March 2012 in which he requested band-aids or any kind of

bandages.   (See Doc. No. 254-8 at 8-9.)   Moreover, in his deposition, Plaintiff testified that, after

he returned to BVCF from HRRMC, a nurse in the infirmary gave him three bandages to cover his

incisions.   (Doc. No. 254-27 at 102.)   When Defendant Fisher allegedly denied him anymore

bandages after Plaintiff ran out, Plaintiff asked another nurse at the med line window for more

bandages, and she gave him "[m]aybe 50 Band-Aids altogether."   (*Id.* at 103-04.)   Plaintiff

---

3 Defendant Fisher also argues that he is entitled to summary judgment on Plaintiff's claim
that, due to Defendant Fisher's "refusal and failure to treat plaintiff, a stone was allowed to
grow inside plaintiff for over four years and caused poison from plaintiff's appendix to
leak into plaintiff's intestines and body for years" (Doc. No. 1 at .24).   (See Doc. No. 254
at 16-17).   However, Judge Brimmer dismissed this portion of Plaintiff's claim against
Defendant Fisher as barred by the statute of limitations.   (*See* Doc. No. 15-16.)   Thus, the
court need not address Defendant Fisher's arguments in this regard.

testified that he "had some left over from what she gave [him]. By the time it healed [between week three and four after surgery he] did have some left over." (*Id.* at 106-07.)

### D.    Pain Medication

Plaintiff alleges that, when he returned to BVCF after his surgery, "[n]o pain medication was granted and or made available." (Doc. No. 1 at 17.) Plaintiff contends that Defendant Fisher "stated he was going to do tests and issue steroids to assist with the healing process and the loss of weight and muscle tissue, however, no test were completed and no medications were issued." (*Id.* at 18.)

Plaintiff's complaints are belied by the undisputed evidence provided by Defendant. On March 13, 2012—just thirteen days after Plaintiff's surgery—Plaintiff was seen by Defendant Fisher for surgical follow-up and reported "no severe pain or cramps fevers or other [symptoms]." (Doc. No. 254-7.) Defendant Fisher noted "no abdominal tenderness[,] not distended[,] active [bowel sounds], healing and without tenderness." (*Id.*) Defendant Fisher also noted that Plaintiff had been taking "ASA-APAP-Caffeine," Aspirin, and also was taking "Ibuprofen – 600mg . . . twice daily as needed for pain." (*Id.*) Defendant Fisher noted Plaintiff was doing well and made no medication changes. (*Id.*) Further, Defendant Fisher did not note any weight or tissue loss or that he was going to order steroids or additional tests. (*See id.*)

### E.    No Sufficiently Serious Need

Dr. Tiona opines that "Plaintiff has suffered no permanent restrictions as a result of Dr. Fisher's treatment of Plaintiff," "Plaintiff's present conditions are not due in any way to any alleged acts or omissions of Dr. Fisher with respect to his treatment of Mr. Vreeland" (*id.* at 22), and "[t]here are no medical restrictions on Mr. Vreeland due to Dr. Fisher's treatment of him (*id.* at

24).   Moreover, the undisputed evidence shows that Plaintiff did not have an infection and did not suffer complications from his appendectomy, Plaintiff did not have significant weight loss over the nine months he was seen by Defendant Fisher following his appendectomy, Plaintiff received sufficient bandages to cover his incisions until they were fully healed, and Defendant Fisher did not deny Plaintiff pain medications.

Plaintiff has failed to produce objective evidence that the deprivations at issue were sufficiently serious under the standards of an Eighth Amendment medical indifference claim. Thus, Defendant Fisher is entitled to summary judgment.

**2.**      ***Subjective Component***

Even if Plaintiff had met his burden with regard to establishing a genuine issue of material fact concerning the objective component of his claims, his claims still would warrant dismissal. As to the subjective component of a deliberate indifference claim, the plaintiff must prove that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.   That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Id.*

The Court of Appeals for the Tenth Circuit has held:

> So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met.   Indeed, our subjective inquiry is limited to consideration of the doctor's knowledge at the time he prescribed treatment for the symptoms presented, not the ultimate treatment necessary . . . .

*Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir.2006).

Defendant has supported his motion for summary judgment with evidence showing Plaintiff did not have an infection and did not suffer complications from his appendectomy, Plaintiff did not have significant weight loss over the nine months he was seen by Defendant Fisher following his appendectomy, Plaintiff received sufficient bandages to cover his incisions until they were fully healed, and Defendant Fisher did not deny Plaintiff pain medications.   Thus, it is Plaintiff's burden to come forward with evidence defeating the motion.   *See Anderson*, 477 U.S. at 257.

Here, the record does not even approach establishing a denial of adequate medical care, much less an issue relating to a culpable state of mind, *i.e.*, deliberate indifference to Plaintiff's medical conditions.   As such, Defendant Fisher is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

## 2.     *Motion to Amend Complaint*

Plaintiff seeks to amend his complaint to add a claim for medical malpractice/negligence against Defendant Fisher.   (Doc. No. 184 at 3.)   Plaintiff also seeks to reassert claims against former defendants Kari and Karen Johnson.   (*Id.*)   Finally, Plaintiff seeks to assert new claims against John L. Davis, the former warden of BVCF, Richard Fisher, a captain at BVCF, and Patricia Baldwin, a supervisor for the Health Services Administrator at BVCF.   (*Id.* at 5 & Doc. No. 184-5 at 2-3)

Plaintiff seeks to add a claim of medical malpractice/negligence based on "newly discovered" evidence regarding Defendant Fisher's alleged drug and/or alcohol abuse and the surrender of his medical license.   (*See* Doc. No. 184 at 3.)   Plaintiff claims due to Defendant

Fisher's alleged drug and alcohol abuse his "judgment was clouded," which "rendered him unable to effectively listen to Plaintiff's medical complaints, examine the Plaintiff, and to render effective medical care."   (Doc. No. 184-5 at 17.)   Plaintiff seeks to reassert a claim against former defendant Baroni for her alleged denials of medical care for his "abdominal illnesses, cramps, pains, and other complications" after his surgery.   (*See id.* at 22.)   Plaintiff also seeks to assert a claim against former defendant Baronie and to add a claim against John L. Davis, Richard Fisher, and Patricia Baldwin for their allegedly allowing Defendant to practice medicine in an unsafe fashion even though they knew that he was addicted to drugs and alcohol.   (*See id.* at 23–24.) Finally, Plaintiff seeks to reassert a claim against former defendant Johnson for malpractice and medical neglect related to complications of the appendectomy performed by former defendant Johnson.   (*See id.* at 20–21.)

For the reasons set forth *supra*, however, any such claim against Defendant Fisher or John L. Davis, Richard Fisher, Patricia Baldwin and former defendants Baroni and Johnson would be subject to dismissal as futile because Plaintiff has failed to show that he suffered from any complications following his surgery due to Defendant Fisher's or any other medical provider's care.

Plaintiff's motion to amend his complaint should be denied.

## CONCLUSION

Based on the foregoing, this court respectfully

15

**RECOMMENDS** that "Defendant Thomas C. Fisher's Motion for Summary Judgment" (Doc. No. 254) be **GRANTED** and Plaintiff's "Motion for Leave to Amend and to Supplement Complaint" (Doc. No. 184) be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co.*

*v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 25th day of February, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge